## Case No. 13,708.

### In re SYKES.

### [5 Biss. 113.] [1]

District Court, N. D. Illinois. March, 1870.

BANKRUPTCY — COMMERCIAL PAPER — REFUSAL TO PAY—ADVICE OF COUNSEL.—ESTOPPEL—ACTUAL SOLVENCY — GOOD FAITH — PRACTICE.

1. A note given by a merchant for money loaned is "commercial paper" within the meaning of the bankrupt act [of 1867 (14 Stat. 517)]. The term means negotiable paper given in due course of business, whether the element of negotiability be given it by the law merchant or by statute.

2. A refusal by a debtor, acting in good faith, under the advice of counsel, to pay his note, on the ground that he had a valid defense, is not an act of bankruptcy.

3. So, if the debtor is in good faith advised by counsel that the holder has not a good title to the note, his refusal to pay it is no act of bankruptcy.

4. Nor does the fact that offers and propositions for the payment of the note had been made, necessarily preclude him from making his defense.

5. The proof must be confined to the acts of bankruptcy charged in the petition; nor can a refusal at a date prior to that stated in the petition be shown in evidence.

6. The fact that the maker is actually solvent and met all his other paper promptly, is a proper element as rebutting any presumption of refusal on the ground of insolvency.

7. A stipulation in a suit at law upon a note, giving time to plead, does not operate as an extension of time upon the note, as against the bankrupt act; but the proceedings in such suit

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

may be given in evidence in determining the good faith of the defense.

In bankruptcy. The petitioner, the Manufacturers' National Bank of Chicago, asks that the respondent, James W. Sykes, be adjudged a bankrupt. The act of bankruptcy set forth is, that Sykes, being a trader, on the 20th and 27th of January, 1870, stopped payment of his commercial paper and did not resume payment thereof for the space of fourteen days. The paper described under the designation of "commercial paper" in the petition, is the note of Sykes for the sum of $13,000, dated on the 21st of October, 1869, payable to his own order, on demand, and duly indorsed by him.

BLODGETT, District Judge (charging jury). It is objected on the part of the respondent that this note, not being negotiable by the law merchant, and having been given for a loan of money, and not for commodities bought or sold on the market in due course of trade and business, is not "commercial paper" within the intent and meaning of the bankrupt act. I do not think, however, that either of these objections are well taken. The phrase "commercial paper" as used in this act, seems to me to mean negotiable paper (that is, promissory notes or bills of exchange), made by a banker, merchant, or trader in the due course of his business as such banker, merchant, or trader, whether the element of negotiability be given the instrument by the law merchant (or common law of merchants) or by statute. It seems to me sufficient that the paper be negotiable, —that is, transferable by indorsement or delivery. And the business of the respondent being that of a trader in produce, carried on mainly through the agency of loans of money negotiated through the banks, to be repaid by drafts drawn against shipments thus bought, such loans are made in due course of that business.

It is further objected on the part of the respondent that, although this note remains unpaid, yet he has not been guilty of an act of bankruptcy by neglecting or refusing to pay the same because he has, or has been advised by counsel that he has, a legal defense to the note—which defense he was in good faith making to an action at law brought on the note at the time this petition was filed.

And the court instructs you that if the respondent did, acting under the advice of counsel, believe, in good faith, at the time this alleged act of bankruptcy was committed, that is, on the 20th day of January last, that he had a valid defense to this note, then his failure to pay the note was not a suspension of payment within the intent of the bankrupt act. But it must be a bona fide belief that he had such a defense; not a mere pretext of a defense, but some tangible and defined idea that he could, by appeal to

the courts, avoid the payment of all or a part of the demand.

As I have allowed a wide range to the testimony bearing on this branch of the defense, it seems necessary that I should explain to you the direction and bearing to be given this testimony as applicable to the issue you are to pass upon. The note in question was given for and represents a balance of overdrawn bank account between the respondent and the Fourth National Bank of this city. It is claimed by the respondent that in September or October last he, being then engaged in this city in the business of buying and shipping produce, made a contract with the Fourth National Bank, through Mr. Maynard, its cashier, by which the bank was to advance him funds sufficient to buy and ship 1,000,000 bushels of oats, or other kinds of produce equivalent to that amount; that the bank was to pay his checks as he made purchases, and as fast as he made shipments he was to make drafts against these shipments, which were to be credited to him by the bank, the bank to have the exchange on the drafts as well as interest on the overdraft; that upon the faith of this agreement, he commenced his purchases, and had a portion of them made, when the bank dishonored his checks, thereby seriously impairing his credit, compelling him to change the destination of his shipments, and compelling him to sell at a sacrifice, which he need not have done if the bank had kept faith with him. After this occurrence, he gave the note in question, as he says, merely as a memorandum of the amount of his overdraft, and not as a settlement.

As to whether such an agreement was in fact made, there is a conflict of testimony; the respondent testifying to his version of it and Mr. Maynard contradicting him. It is also insisted under the testimony, that on or about the 27th of November last, an arrangement was entered into between certain of the directors and officers of the Fourth National Bank and the Manufacturers' National Bank of this city, whereby the assets (including the note in question), business and good-will of the Fourth National Bank were all transferred to and merged in the Manufacturers' National Bank, under such circumstances as to make such transfer void and totally inoperative, and that consequently the petitioner is not the owner of the note, and has no right to present it in this or any other form.

You will bear in mind, gentlemen, that we are not trying the question of the validity of this defense, nor the extent to which it may avail the respondent, but only his sincerity in insisting upon it; and the evidence adduced, pro and con, as to the dealings and transactions between the parties, and the transfer of the assets of the Fourth National Bank, is only to be considered by you for the purpose of determining whether the respondent failed or refused to pay this note at the time alleged, because he believed, in good faith, that he had a valid defense to the whole or a part of it.

If he was advised by counsel and believed that he could set off against this note the damages which he had sustained by the failure of the Fourth National Bank to keep its contract with him, he then had the right to interpose that defense in a court of law.

So, too, in regard to petitioner's title to the note. If the respondent had been advised by counsel, that, owing to the circumstances under which the Manufacturers' National Bank obtained this note, they had no title thereto,—that they stood in the same position as a person who had stolen it, and had no right to enforce its collection; that it was still the property of the Fourth National Bank, and he was liable to them and them only thereon,—such advice, if given in good faith, on a fair statement of the facts, would justify a refusal to pay, and an act of bankruptcy could not be predicated upon such refusal.

Nor does the fact that the respondent made divers offers and propositions for the payment of the note or the overdraft before the note was given, necessarily conclude or shut him off from making these defenses at the time of the alleged stoppage of payment. These offers were not accepted, and besides, the respondent testifies that these offers were made under circumstances of great excitement, when his credit had been imperiled, and he was willing to sacrifice much to reinstate it.

In this connection it is proper that I allude to the position taken by counsel for the petitioner, that respondent had been guilty of acts of bankruptcy by refusing payment of this note when demanded at times prior to that alleged in the petition, but I am of opinion, and so instruct you, that the petitioner is confined to the act of bankruptcy alleged in the petition. This being a note on demand, it became due when demanded, and had the petitioners intended to avail themselves of any of the prior demands and refusals or suspensions of payment as constituting acts of bankruptcy, they should have averred or set them out in the petition, in order that the respondent might be prepared to meet them in evidence. The real question is, did he on the 20th or 27th of January last commit an act for which he should be adjudged bankrupt? A legal defense may have occurred after the first demand, which he might have the right to set up when the last demand was made.

It is also insisted in the proof on the part of the respondent, that this is the only paper which he has failed to meet at maturity; that he had other commercial paper extant at the time of the failure to meet this note, and has paid the same promptly as it be-

came due; that he is a man of means, and has not stopped or suspended business on account of the failure to meet this note. These facts, if established by the evidence, should go far toward rebutting any presumption of bankruptcy which might arise from the failure to meet the note in question, and tend to show that the failure to meet this note was not in consequence of insolvency, but from other causes not making him amenable to the bankrupt act.

It is also insisted on the part of the respondent. that the note in question is not "commercial paper," because the same was not given in due course of business, but merely as a memorandum to be charged up to the "bills receivable" of the bank, instead of remaining as an overdraft on the books, and that it was not the expectation or intention of the parties that it should be paid "on demand," or that a payment of the whole amount would be insisted upon at any time, and that a settlement of it had been a constant subject of negotiation between the parties. There is much in the evidence to justify this assumption. But as the question is a new one, I prefer to reserve it and consider it on a motion for a new trial, if the jury shall find a verdict against the respondent on the points already submitted to them.

It is admitted that prior to the commencement of these proceedings, the petitioner had instituted a suit on this note in the superior court of Chicago against the respondent, which suit is still pending, and in which the issues are made up so as to permit the trial of the defenses indicated. And it is insisted that the stipulation giving time to plead in that case operated as an extension upon the note as against the bankrupt act. I do not concur in this view of the matter for reasons which I will not take time to give.

But this stipulation. and the whole proceedings in the suit at law, so far as in evidence, may be considered as circumstances going to prove the fact of the good faith of the respondent in urging his defense at law to this note, and give such weight in that direction as the jury shall decide them worth.

You will then, gentlemen of the jury, only consider whether the evidence, taken altogether, shows, that on the 20th or 27th of January last the respondent, James W. Sykes, influenced by the advice of counsel, given upon a fair statement of the facts, did believe that he had a valid defense to the note in question and refused or neglected payment on that ground. If you are so satisfied, you will find the respondent not guilty of the acts of bankruptcy charged.

But if, on the contrary, you believe that said respondent had no such bona fide belief, and set up such defense merely as a pretext, and without the intent and purpose of prosecuting the same in good faith, you will find him "guilty" as charged.

Verdict and judgment for respondent.

NOTE. See, further, that a note given for borrowed money is commercial paper. In re Kenyon, 6 N. B. R. 238, 245. See, also, In re Hollis [Case No. 6,621]. Contra: In re McDermott Patent Bolt Manuf'g Co. [Id. 8,750].

So an indorser is held as the maker of commercial paper (In re Nickodemus [Case No. 10,254]), whether the note be one of accommodation or not (In re Clemens [Id. 2,878], reversed in [Id. 2,877]; In re Chandler [Id. 2,591]).

That non-payment of commercial paper to which there is a good defense, does not constitute an act of bankruptcy, consult In re Thompson [Case No. 13,936] and cases there cited; also, In re Munn [Id. 9,925].

Consult Unthank v. Travelers' Ins. Co. [Case No. 16,795], as to the effect of a proposition to compromise.